# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   09-CR-30107 |
| | ) | |
| JEFFREY PRICE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter came before the Court on March 12, 2012 for the sentencing of Defendant Jeffrey Price.  The Government appeared by Assistant United States Attorney Elham M. Pierson and Attorney Alexandra R. Gelber of the United States Department of Justice. Defendant appeared in person with his attorney, Jon Gray Noll.

On October 6, 2011, Defendant was charged by a Second Superseding Indictment (d/e 76) for Count 1, Use of a Minor to Produce Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), and

1

Count 2, Possession of Child Pornography in violation of 18 U.S.C. §

2252A(a)(5)(B) and (b)(2).  On November 4, 2011, a jury found

Defendant guilty of Counts 1 and 2 of the Second Superseding

Indictment, and a judgment of conviction was entered on both counts.

See Minute Entry of Nov. 4, 2011; d/e 159.  The United States

Probation Office prepared a Revised Presentence Report (PSR), dated

March 1, 2012.

At the sentencing hearing, this Court stated that it had reviewed

the PSR, Defendant's Sentencing Memorandum (d/e 181), the

Government's Sentencing Memorandum (d/e 182), and letters from

Defendant's family and friends.  The Court was informed that the victim

in this case had chosen not to complete a victim-impact statement.  The

Court then heard arguments regarding objections to the PSR, including

pro se argument by Defendant.  The Court overruled the objections and

adopted the findings of the PSR as its own.  The Court determined that

the Guideline sentence was 360 months for Count 1 and 120 months for

Count 2, to run consecutively, with a supervised release term of at least

five years and up to life on each count.

The Court then heard testimony from the Government's witness, arguments from the Government and Defendant's counsel, and the allocution of Defendant. The Court declined to impose a below-Guideline sentence based on Defendant's physical and mental condition or Defendant's potential to contribute to society. However, after consideration of the sentencing factors in 18 U.S.C. § 3553(a), as well as the relevant Guideline provisions, case file, and all evidence and arguments presented, this Court sentenced Defendant to a below-Guideline sentence of 216 months on Count 1 and 72 months on Count 2, to run concurrently, with a lifetime term of supervision. The Court now sets forth its reasons for imposing the sentence in further detail.

## I. BACKGROUND

### A. Facts

On October 15, 2009, Special Agent Eric Bowers of the Department of Homeland Security, Immigration and Customs

Enforcement ("ICE"), obtained a federal search warrant to search electronic storage media previously seized from Defendant by the Springfield Police Department, including a Dell Inspiron laptop computer and a Dell Dimension computer. Subsequent forensic examination of the computers resulted in the discovery of images of Defendant's daughter, R.P., alleged to be child pornography. Additionally, the Dell Inspiron contained approximately 937 still images and 21 videos of children other than R.P. that were also alleged to be child pornography.

On October 6, 2011, Defendant was charged by a Second Superseding Indictment for Count 1, Use of a Minor to Produce Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), and Count 2, Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Count 1 of the Second Superseding Indictment alleged that between 2002 and 2004, Defendant knowingly used, persuaded, induced, enticed, or coerced his minor daughter, R.P., to engage in sexually explicit conduct for the purpose of producing a visual

depiction of such conduct, knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce and mailed.  <u>See</u> 18 U.S.C. § 2251(a).  Count 2 of the Second Superseding Indictment alleged that between February 2008 and September 11, 2009, Defendant knowingly possessed materials (the Dell Inspiron and the Dell Dimension) containing child pornography where said images were produced using materials that had traveled in interstate and foreign commerce.  <u>See</u> 18 U.S.C. § 2252A(a)(5)(B).  Ten days before the trial, Defendant moved to dismiss his appointed counsel and proceed pro se.  <u>See</u> Minute Entry of Oct. 19, 2011.  After finding that Defendant's waiver of counsel was knowing and voluntary, this Court granted Defendant's motion and noted that Defendant's previously appointed counsel would remain as standby counsel.[1]

On November 4, 2011, the jury found Defendant guilty of Counts 1 and 2.  On Count 1, the jury completed a Special Verdict specifically finding that five of the images of R.P. constituted child pornography.

---

[1] Defendant's standby counsel was reappointed as counsel for Defendant following Defendant's conviction and represented Defendant at sentencing.

The case proceeded to sentencing.

**B.     Objections to the Presentence Investigation Report**

As an initial matter, the Court noted a typographical error in paragraph 122 of the PSR, which erroneously stated that Defendant's Criminal History category was I where it was in fact II. Defendant and the Government offered no objection, and the Court made that correction by interlineation.

The Government stated no objections to the PSR. Defendant had numerous objections, including 14 objections stated in the Addendum to the PSR and additional objections stated in Defendant's Sentencing Memorandum.[2]

Defendant objected to factual statements in paragraphs 6, 8, 9, 13-17, 19-22, 30, 31, 39, 45, 48, 54, and 64 of the PSR. Defendant objected to paragraphs 6, 8, 9, and 14 of the PSR, contending that he

_____

[2] In ruling on the objections at the sentencing hearing, the Court referred to the objections either by (1) the number assigned to the objection on pages 29-38 of the Addendum to the PSR, or (2) the number of the paragraph in the PSR to which Defendant objected. In this Opinion, the Court refers to the objections by the number of the paragraph of the PSR.

never acknowledged to anyone that he had sexual relations with his sister, J.P., and that there was no documentation from agents regarding other instances of abuse or molestation of J.P. Defendant further objected on the grounds that the alleged conduct with J.P. occurred approximately 31 years before the conduct for which Defendant was convicted in the present case and that there was no factual similarity between the conduct. The Court overruled Defendant's objection, finding that paragraphs 6, 8, 9, and 14 were based on sufficiently reliable information, including but not limited to officers' interview with J.P. in December 2009.

The Court overruled Defendant's objections to paragraphs 13, 16, 17, 30, and 31 of the PSR because the Court found that Defendant had provided no evidence to contradict the statements in those paragraphs.

Next, the Court overruled Defendant's objection to paragraph 14, which described a monitored telephone call in which Defendant told his wife, Patricia Price, that Defendant believed he could earn money by publishing naked photographs of R.P. on the internet. Defendant argued

that the conversation was taken out of context. An audio recording of the phone conversation referenced in paragraph 14 was played at trial, and a transcript of the phone conversation was entered into evidence. Based on this Court's review of the audio recording and transcript, this Court found that the conversation referenced in paragraph 14 of the PSR was not taken out of context.

Defendant objected to paragraph 15, contending that he was under duress when officers recovered his Dell Inspiron laptop. This Court overruled the objection, because this Court previously found that officers lawfully obtained Defendant's laptop when the Court denied Defendant's Motion to Suppress on October 11, 2011. See d/e 80.

The Court also overruled Defendant's objection to paragraph 19 on the ground that the objection was contrary to the jury verdict. In the objection, Defendant denied that he saw any of the child pornography found on his computer prior to September 11, 2009, which was the day that agents seized Defendant's computers. However, Defendant's argument was rejected by the jury.

The Court also overruled Defendant's objection to paragraph 21 on the grounds that the objection was contrary to the jury verdict. In the objection, Defendant maintained that the images of R.P. were not sexually explicit. However, the jury reviewed the images of R.P. described in paragraph 21 of the PSR and found that the images were sexually explicit and constituted child pornography.

Next, Defendant objected to paragraph 22, asserting that the Clean Disk Security software is not designed to eliminate evidence but is a program used to clean the hard drive of a computer after deleting files so the computer can run faster. The Government suggested changing the word "designed" to "used," and Defendant agreed to the change. Defendant had no remaining objection to paragraph 22 following that correction.

Defendant next objected to paragraphs 39 and 48, arguing that R.P. was age 12 at the time the photographs were taken. Defendant believed that R.P. testified to this fact and that the fact was further confirmed by the fact that the Price family was living at the Lucky Horseshoe address

when the photographs were taken.  The Court overruled the objection, finding that the record, including trial testimony, supported that R.P. was under the age of 12 at the time the photographs were taken.

Defendant next objected to paragraphs 45 and 54, arguing that Probation erroneously applied a two-point enhancement for obstruction of justice to his offense level under U.S.S.G. § 3C1.1.  The Court overruled the objection and adopted Probation's position, finding that the record supported that Defendant attempted to obstruct the investigation by attempting to influence R.P. through communicating with R.P.'s mother and maternal grandmother in an attempt to persuade R.P. to recant her allegations against Defendant.

Next, the Court overruled Defendant's objection to paragraph 64 with respect to Defendant's contention that he never abused his daughter.  The Court found that Defendant's contention that he never abused his daughter was contrary to R.P.'s testimony at trial.  This Court found R.P.'s trial testimony to be credible.

The Court then ruled on Defendant's objections challenging the

application of specific Guideline provisions in the PSR. Defendant

objected to paragraph 64 of the PSR that called for a five-point upward

adjustment to his base offense level pursuant to U.S.S.G. § 4B1.5, which

is the adjustment for "Repeat and Dangerous Sex Offender Against

Minor." The Court overruled the objection as moot, because the Court

determined that Defendant's objection had no bearing on sentencing.

<u>See</u> Fed. R. Crim. P. 32(i)(3)(B). As Defendant and the Government

acknowledged, the application of the § 4B1.5 enhancement would not

affect Defendant's total offense level under the Guidelines because

Defendant's total offense level would reach the offense level ceiling of 43

whether or not the § 4B1.5 enhancement applied.

For similar reasons, the Court determined that Defendant's

objections to paragraphs 36 and 49-55 had no bearing on sentencing.

With respect to paragraphs 36 and 49-55, Defendant objected to

Probation's calculation of Defendant's offense level for Count 2 pursuant

to the U.S.S.G. § 2G2.2(c)(1) cross-reference provision.[3] Finding that §

---

[3] Count 2 charged Defendant with violating 18 U.S.C. § 2252A(a)(5)(B) and
(b)(2). Ordinarily, the base offense level for this offense would be 18, applying

2G2.2(c)(1) applied, Probation had calculated the offense level for Count

2 applying § 2G2.1, which resulted in the same offense level for Count 2

as for Count 1.  Defendant argued that the offense level for Count 2

should have been calculated under U.S.S.G. § 2G2.2, which would have

resulted in a lower offense level for Count 2.  This Court overruled the

objection as moot because, as Defendant acknowledged, Defendant

would reach the offense level ceiling of 43 whether or not the Court

applied the § 2G2.2(c)(1) cross-reference provision.

Having ruled on all previously stated objections, this Court then

asked Defendant whether he wished to make additional pro se objections.

Defendant did not raise additional objections to the PSR but reiterated

objections previously argued by Defense counsel and ruled on by the

Court.  Specifically, Defendant stated that there was no evidence that he

molested R.P. and that the allegations were based on hearsay and lies.

---

U.S.S.G. § 2G2.2.  However, § 2G2.2(c)(1) states:

> "If the offense involved causing, transporting, or offering or seeking by notice
> or advertisement, a minor to engage in sexually explicit conduct for the
> purpose of producing a visual depiction of such conduct or for the purpose of
> transmitting a live visual depiction of such conduct, apply § 2G2.1 . . . if the
> resulting offense level is greater than that determined above."

Defendant also stated that the photographs of R.P. were not sexually explicit but were art.

At the conclusion of Defendant's argument, the Court adopted the findings of the PSR as its own.

## C.   Defendant's Statements at the Sentencing Hearing

The Court then gave Defendant the opportunity to make a statement in allocution before being sentenced.  In his statement, Defendant stated that he was innocent and argued that a number of his rights had been violated by this Court.  First, Defendant stated that photographs of R.P. were protected under the First Amendment. Defendant stated that, because he was wrongfully incarcerated and denied bond, his physical appearance at trial was diminished.  Therefore, Defendant was unable to prepare a proper presentation at trial that could have convinced the jury that the photographs were protected by the First Amendment.  Defendant stated that bond should not have been denied because he was not a flight risk or a danger to the community. Defendant also argued that his Fourth Amendment rights had been

violated because his computers had been taken from him under duress. Finally, Defendant urged the Court to consider that he is a "good father, good husband," and "good citizen of the community."

In response to Defendant's statements about his appearance at trial, this Court now notes that Defendant appeared well-attired throughout the trial and did a good a job representing himself. Defendant's remaining statements during allocution addressed issues that were either previously ruled on by this Court or resolved by the jury verdict. Therefore, those issues did not warrant further response from the Court.

## II. ANALYSIS

This Court notes that the Guidelines are advisory and that this Court is required to exercise its discretion in determining Defendant's sentence. See United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553(a). In imposing a sentence, "[t]he district court may not presume that a within-Guidelines Sentence is reasonable." United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This Court must first

calculate Defendant's advisory Guideline range and then consider the factors set forth in 18 U.S.C. § 3553(a) before determining an appropriate sentence.  Id.

## A.    Guidelines Calculation

On Count 1, Defendant had a base offense level of 32.  Under U.S.S.G. § 2G2.1(b)(1)(A), this Court applied an upward adjustment of 4 because the offense involved a minor under the age of 12.  Under U.S.S.G. § 2G2.1(b)(2)(A), the Court applied an upward adjustment of 2 for commission of a sexual act or sexual conduct with the victim, R.P.  Under U.S.S.G. § 2G2.1(b)(3), the Court applied an upward adjustment of 2 for distribution of R.P.'s images, which surfaced in Nashville, Tennessee and in about160 other investigations.  The Court also imposed an upward adjustment of 2 under U.S.S.G. § 2G2.1(b)(5) for Defendant's role as parent and legal guardian of the victim, R.P.  Finally, the Court applied an upward adjustment of 2 under U.S.S.G. § 3C1.1 for obstruction of justice.  After applying the stated adjustments, Defendant's adjusted offense level on Count 1 was 44.

On Count 2, the possession count, Defendant's base offense level would ordinarily have been 18, subject to applicable adjustments. <u>See</u> U.S.S.G. § 2G2.2 (applying to offenses under 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)). However, because the cross-reference provision stated in U.S.S.G. § 2G2.2(c) applied, Defendant's offense level for Count 2 was calculated applying § 2G2.1. This resulted in an offense level of 44, the same as Defendant's offense level for Count 1.[4]

The Court then applied a multiple count adjustment of 2 under U.S.S.G. § 3D1.4, bringing the offense level to 46. Finally, the Court applied an adjustment of 5 under U.S.S.G. § 4B1.5(b) (Repeat and Dangerous Sex Offender Against Minor), bringing Defendant's offense level to 51.[4] However, because the maximum offense level is 43, the Court determined that Defendant had a total offense level of 43.

---

[4] As explained earlier in this Opinion, this Court overruled as moot Defendant's objection to the calculation of his offense level for Count 2 using §2G2.1. The Court found that Defendant would reach the offense level ceiling of 43 whether or not the Court applied § 2G2.2(c).

[4] As explained earlier, the Court overruled as moot Defendant's objection to the application of the adjustment under 4B1.5, because Defendant would have a total offense level of 43 whether or not the Court applied the adjustment.

Defendant had 3 criminal history points, placing him in a Criminal History Category of II. Based on a Total Offense Level of 43 and a Criminal History Category of II, and according to the Sentencing Table, the applicable Guideline sentence would ordinarily have been life imprisonment. <u>See</u> U.S.S.G. Ch. 5 Pt. A. However, because the statutory maximum penalty is 30 years on Count 1 and 10 years on Count 2, the Court found that the Guideline sentence was the statutorily authorized maximum sentence. Therefore, the applicable Guideline sentence was 30 years for Count 1 and 10 years for Count 2. The Court found that under the Guidelines, the terms were to run consecutively. <u>See</u> U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively but only to the extent necessary to produce a combined sentence equal to the total punishment."). Therefore, the Guideline sentence amounted to a total of 40 years.

The Court also found that both the statutory and Guidelines

provisions called for a term of supervised release of at least 5 years and

up to life on each count, with the policy statement calling for a life term.

Finally, the Court found that the Guideline provisions called for a fine

between $25,000 and $250,000 but that no fine would be imposed

because Defendant had no ability to pay a fine.

B.    Court's Consideration of Factors Set Forth in 18 U.S.C. § 3553(a)

After determining the Guideline range, this Court is required to

consider the factors set forth in 18 U.S.C. § 3553(a).  Section 3553(a)

provides the following:

> (a) Factors to be considered in imposing a sentence. — The court
> shall impose a sentence sufficient, but not greater than necessary, to
> comply with the purposes set forth in paragraph (2) of this
> subsection.  The court, in determining the particular sentence to be
> imposed, shall consider —
>> (1) the nature and circumstances of the offense and the
>> history and characteristics of the defendant;
>> (2) the need for the sentence imposed--
>>> (A) to reflect the seriousness of the offense, to promote
>>> respect for the law, and to provide just punishment for
>>> the offense;
>>> (B) to afford adequate deterrence to criminal conduct;
>>> (C) to protect the public from further crimes of the
>>> defendant; and
>>> (D) to provide the defendant with needed educational
>>> or vocational training, medical care, or other

correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

First, this Court considered the "nature and circumstances" of the offense.  See 18 U.S.C. § 3553(a)(1).  In this case, Defendant was convicted of producing sexually explicit photographs of his daughter, R.P., when she was between 9 and 11 years old.  The photographs depict R.P. posing in the nude or wearing her mother's lingerie, and many of the photographs focus on the genital area.  Defendant abused his position of trust and manipulated his young daughter to pose for the photographs and then distributed the photographs on the internet for others to view. The audio clips, played at trial, of a monitored telephone conversation between Defendant and his wife, Patricia Price (R.P.'s stepmother), further revealed that Defendant hoped to make money by posting the photographs of his daughter on the internet.  Because of Defendant's criminal conduct, images of R.P. are circulating on the internet and can

likely never be removed. Trial testimony indicated that R.P.'s images were found on a computer in Nashville, Tennessee. At the sentencing hearing, the Government presented a witness who testified that R.P.'s images have been recovered in at least 160 other cases across 39 states.

Defendant's production of the pornographic images of R.P. must be considered in context of his pattern of molestation and harassment of R.P. when she was a child, which included the following instances: (a) as part of an "anatomy lesson," Defendant touched R.P.'s genitals; (b) Defendant inserted his finger into R.P.'s vagina, purporting to show her how to use a tampon; (c) Defendant applied yeast infection medicine on R.P.; (d) Defendant groped R.P.'s breasts, purporting to perform a breast exam on her; and (e) Defendant, on more than one occasion, offered to have sex with R.P. or to show her how to masturbate. On one occasion, Defendant asked R.P. whether she would resist if he came into her bedroom at night and tried to have sex with her, suggesting that she could pretend to be asleep. Defendant's proposition, described in R.P.'s trial testimony, suggested that R.P. likely would not have felt safe in her

own home as a result of Defendant's harassment of her.

Next, the Court considered Defendant's history and characteristics. See 18 U.S.C. § 3553(a)(1). The Court noted that Defendant had no prior felony convictions, but the PSR indicated that Defendant had been previously convicted of solicitation of a sexual act and had been cited for approximately 10 traffic violations. Defendant was also twice arrested for DUI, in 1989 and 2006. More relevant to the Court, however, was that trial testimony and information in the PSR suggested that Defendant is a repeat predator who has targeted his daughter, R.P., as well as his sister, J.P. In Defendant's Sentencing Commentary, Defendant urged this Court to disregard the statements in the PSR indicating that he abused J.P. when she was a child, arguing the information was not relevant to sentencing. However, this Court found the information highly relevant to the charged offenses and chose not to disregard the information. This Court notes that sentencing courts have traditionally and constitutionally "considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." Nichols v. United States, 511 U.S. 738,

747 (1994).  Here, the PSR indicated that Defendant physically molested J.P. when she was a minor.  Specifically, J.P. told agents that Defendant began to "abuse" her when she was about 8 years old.  J.P. stated that she performed oral sex on Defendant and received it from him on multiple occasions.  J.P. also acknowledged that she "lost her virginity" to Defendant when she was 12 and Defendant was 17.  J.P. stated that the period of abuse ended when she was 14.  These allegations, taken alongside Defendant's repeated molestation and harassment of R.P., indicated to this Court that Defendant is a repeat offender who may re-offend if given the opportunity to come into contact with young girls again.

In addition to considering Defendant's past relevant criminal conduct, this Court considered Defendant's other characteristics.  Importantly, Defendant had shown a complete lack of acceptance that he committed any crime and, consequently, a complete lack of remorse.  Most notably, Defendant continued to deny that he did anything wrong, despite his admission at trial that he took the photographs of R.P. that

the jury deemed to be child pornography.  At trial, Defendant took the stand and explained to the jury that the photographs were modeling photographs.  At the sentencing hearing, Defendant again insisted that the photographs were "art" and that the jury had mistaken them for child pornography either because of Defendant's inability to properly prepare the case due to this Court's denial of bond or because the jury was unable to appreciate the artistic value of the photographs because this Court sits in the "conservative Bible-belt of the Midwest."

Also relevant to Defendant's characteristics, Defendant contended that he has great potential to contribute to society.  Defendant's counsel argued at sentencing that Defendant had previously sold insurance and is capable of being a functioning citizen.  However, the Court was not persuaded and found that the evidence presented did not suggest that Defendant's potential to contribute to society was noteworthy.  The letters of reference submitted to this Court on Defendant's behalf indicated that certain family members and friends continue to support Defendant and believe that he is a good person with potential to

contribute to society. In particular, Defendant's wife, Patricia Price, and Patricia Price's daughter, Shayla Furlow, wrote that Defendant had gone out of his way to love and care for his family in the past. However, this Court found that the letters had to be taken in context of Defendant's crimes against another member of his family—R.P. The letters did nothing to mitigate the crimes Defendant committed.

Further, the Court found the letters from Defendant's family and friends to be troubling, because they showed a complete lack of acceptance that Defendant committed any crime. Defendant's family and friends seemed to believe that this case was some sort of misunderstanding or mistake—that Defendant is the victim, has been wrongfully prosecuted, and deserves to be returned to his family.

Having considered the nature and circumstances of the offense and Defendant's history and characteristics, the Court considered the need for punishment. See 18 U.S.C. § 3553(a)(2). To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, this Court found that Defendant deserved a sentence

higher than the statutory minimum due to a number of troubling factors. The crime that Defendant committed was especially serious because Defendant physically molested the victim in addition to producing and distributing images of her. The fact that Defendant is the father of the victim and egregiously abused his position of trust also added to the seriousness of the crime. Also, Defendant's obstruction of justice and lack of acceptance indicated a strong need for punishment.

Additionally, the Court found there was a strong need for punishment in order to afford adequate deterrence and to protect the public and Defendant's family from future crimes by Defendant. The information presented at trial and in the PSR showed that Defendant had not only harmed R.P. but had also sexually abused his sister when she was a child. These facts indicated to the Court that Defendant is a repeat predator who poses a threat to his family and to the public.

Defendant made several arguments for mitigation of the sentence. Exercising its discretion, this Court declined to mitigate the sentence on the grounds requested by Defendant. The Court found that Defendant

had not presented convincing evidence showing that either his physical or mental condition is so severe that it warrants a lighter sentence.[5]

Diminished capacity is a recognized ground for seeking a lesser sentence (see United States v. Portman, 599 F.3d 633, 637 (7th Cir. 2010)) where it refers to "cognitive or psychological limitations, falling short of insanity, severe mental retardation, or dementia," that "contribute to the crime for which a defendant is being sentenced by 'reducing—though not eliminating—his ability to appreciate the wrongfulness of his acts, or by reducing his ability to avoid committing them.'" United States v. Lucas, 2012 WL 638501, at *7 (7th Cir. 2012) (citing United States v. Garthus, 652 F.3d 715, 717 (7th Cir. 2011)).  In this case, Defendant has not argued that his ability to appreciate the wrongfulness of his acts was reduced due to diminished capacity, and there is no evidence to suggest that this is true.  Instead, Defendant argued that a prolonged

---

[5] At sentencing, Defense counsel clarified that Defendant requested a variance, not a departure, based on physical and mental health conditions.  This Court stated that, even if the Court had found a departure were warranted on either of these grounds, it would exercise discretion not to depart.  See U.S.S.G. § 5H1.4; U.S.S.G. § 5H1.3.

sentence would be especially difficult for him because he currently suffers from medical conditions that would be difficult to adequately treat in prison. This Court exercised its discretion to decline to mitigate on these grounds.

Defendant also requested mitigation based on his potential to positively contribute to society. As described earlier in this Opinion, this Court was not persuaded by Defendant's argument and found no reason to believe that Defendant's potential to contribute to society substantially mitigated the threat he poses to society.

However, taking into consideration all of the Section 3553(a) factors in context of the facts of this case, this Court found that sentencing Defendant to the Guideline sentence of 40 years—the statutory maximum sentence and the sentence recommended by the Government—would yield a sentence greater than necessary to achieve the purposes of Section 3553(a). Section 3553(a) instructs this Court to "impose a sentence sufficient, but not greater than necessary" to accomplish the sentencing goals advanced in Section 3553(a)(2). It is

this Court's finding that applying the Guideline sentence in this particular case would result in a sentence that is greater than necessary to do justice.

The Seventh Circuit recently clarified that "'district judges are at liberty to reject <u>any</u> Guideline on policy grounds—though they must act reasonably when using that power.'" <u>United States v. Halliday</u>, 2012 WL 447450, at *9 (7th Cir. Feb. 14, 2012) (citing <u>United States v. Corner</u>, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (emphasis in original)). "What matters is whether the sentencing judge correctly calculated the guidelines range and evaluated the § 3553(a) factors to arrive at a reasonable sentence." <u>United States v. Maulding</u>, 627 F.3d 285, 287-88 (2010).

Accordingly, this Court joins numerous other courts in expressing concern with the overly harsh sentences that result from the application of the child pornography sentencing guidelines. Many courts have expressed the view that the child pornography sentencing guidelines are not fully the product of the Sentencing Commission's study and expertise

and are not fully supported by empirical evidence.  The Seventh Circuit has acknowledged that § 2G2.2, the Guideline provision for child pornography possession offenses, is not fully the product of Commission study or expertise; rather, Congress significantly changed sentencing policy in this area primarily through increases in minimum penalties. United States v. Huffstatler, 571 F.3d 620, 623 (7th Cir. 2009) (citing U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 72-73 (November 2004)).

In United States v. Dorvee, the Second Circuit held that a district court's within-Guidelines sentence for possession of child pornography was substantially unreasonable under the facts of the case, identifying "serious flaws in U.S.S.G. § 2G2.2."  616 F.3d 174, 182 (2d Cir. 2010). The court noted that § 2G2.2 is a Guideline "that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." Id. at 184.  The Dorvee Court went on to explain that the Commission,

instead of using "the usual empirical approach [based on data about past sentencing practices] in formulating the Guidelines for child pornography," amended the Guidelines under § 2G2.2 at the direction of Congress, several times since their introduction in 1987, "each time recommending harsher penalties."  Id.; see also United States v. Grober, 624 F.3d 592 (3d Cir. 2010) (similarly expressing concern with § 2G2.2).

An October 2011 article co-authored by Former Senator Arlen Spector described growing "judicial rebellion" against overly harsh sentences for child pornography offenses.  Arlen Spector and Linda Hoffa, "A Quiet But Growing Judicial Rebellion Against Harsh Sentences for Child Pornography Offense—Should the Laws Be Changed?" The Champion 12-14 (Oct. 2011).  The author highlighted that the Sentencing Guidelines for child pornography offenses often produce sentencing ranges that exceed those recommended for more serious crimes:

> By the time a court tallies a defendant's base offense level and the slew of enhancements "that are all but inherent to the crime of conviction," the current child pornography Guidelines almost always recommend sentences near or exceeding the statutory

maximum sentence. Like the defendant in <u>United States v. Dorvee</u>, [616 F.3d 174 (2d Cir. 2010),] a first-time offender convicted of distributing child pornography typically can expect a recommended sentence of 168 to 210 months, close to the 240-month statutory maximum. Compare this to the Guideline sentence for an adult who actually has sex with a child (just 151 to 188 months) or to a violent offender with prior convictions who is sentenced for aggravated assault with a firearm that resulted in bodily injury (just 46 to 57 months).

<u>Id.</u> at 13. The article further reports that judges are increasingly using their discretionary sentencing powers under <u>Booker</u> and <u>Kimbraugh</u> to express disapproval of the Guidelines: "In 2010, federal judges in child pornography sentencings departed below the Guidelines at a rate of 45 percent compared to a departure rate of just 17.8 percent for all other crimes." <u>Id.</u> (citing <u>United States v. Kimbrough</u>, 552 U.S. 85, 110 (2007) (stating that, given that the Sentencing Commission itself had reported that the crack/powder disparity produces disproportionately harsh sanctions, "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case")).

This Court finds that § 2G2.2 is especially problematic because it contains numerous enhancements based on facts that exist in almost every child pornography possession crime and considerably increase the offense level.  For example, § 2G2.2 provides enhancements for possessing images of pre-pubescent minors, possessing large quantities of images, or using a computer.  U.S.S.G. § 2G2.2; see Dorvee, 616 F.3d at 186 (expressing concern that "many of the § 2G2.2 enhancements apply in nearly all cases").  These significant enhancements push sentences in child pornography possession cases upward, approaching or exceeding the statutory maximum.  In this way, § 2G2.2 results in Guideline sentences for possession crimes that do not adequately distinguish between the least and worst offenders, a result that is contrary to the requirements of § 3553(a).  See Dorvee, 616 F.3d at 187 ("[A]dherence to the Guidelines [§ 2G2.2] results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories.  This result is

fundamentally incompatible with § 3553(a).")

This Court recognizes that while many courts have criticized the child pornography sentencing guidelines with respect to § 2G2.2 for child pornography possession and distribution crimes, courts have less frequently criticized § 2G2.1, which applies to production crimes. Section 2G2.1 differs from § 2G2.2 in that it contains enhancements where there is a commission of a sexual act with the victim, where the defendant is the parent of the victim, or where the defendant has distributed the images. These are factors that warrant enhancement. However, this Court finds that § 2G2.1 presents some of the same problems presented by § 2G2.2. Section 2G2.1 is similarly not the product of empirical study by the Sentencing Commission. See Huffstatler, 571 F.3d at 623 ("[P]erhaps for good reason, the government did not take issue with Huffstatler's premise that the child-exploitation guidelines lack an empirical basis. As the Sentencing Commission itself has stated, '[m]uch like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and

directives to the Commission to change sentencing policy for sex offenses.'" (citation omitted)). Additionally, Section 2G2.1 similarly applies enhancements present in nearly every production case, including, for example, an adjustment of 2 or 4 depending on the age of the minor involved and an adjustment of 2 for an offense involving distribution. <u>See</u> U.S.S.G. § 2G2.1. These enhancements skew offense levels upward such that the Guideline does not appropriately distinguish between the least culpable and most culpable offenders. <u>See</u> <u>United States v. Jacob</u>, 631 F. Supp. 2d 1099 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds, finding that § 2G2.1 has some of the same flaws that the court found warranted categorical rejection of § 2G2.2).

No one doubts that production and possession of child pornography are exceptionally serious crimes with victims who suffer permanent harm. As the United States Supreme Court has recognized, "[c]hild pornography harms and debases the most defenseless of our citizens." <u>United States v. Williams</u>, 553 U.S. 285, 307 (2008). This Court also recognizes that children who are victimized by child

pornography are re-victimized every time a new offender views the images. Defendant deserves a punishment that reflects the seriousness of the crimes he has committed.

However, child pornography crimes fall within a spectrum. It is the opinion of this Court that the harshest penalties should be reserved for the worst crimes. Section 3553(a)(6) instructs the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This Court finds that a below-Guideline sentence is needed in this case in order to avoid unwarranted sentencing disparities but also to avoid unwarranted sentencing similarities among defendants convicted of dissimilar conduct. See Gall v. United States, 552 U.S. 38, 55 (2007) (finding that the district judge permissibly considered the need, under § 3553(a)(6), to avoid "unwarranted similarities among other co-conspirators who were not similarly situated").

In this case, the images underlying the possession count do not

depict violence, sadistic or masochistic conduct, or acts of penetration. Therefore, on the possession charge, this Court found that Defendant deserved a sentence lower than the statutory maximum sentence.  After considering all relevant factors, this Court found that a sentence of 72 months would be "sufficient, but not greater than necessary" on the possession charge (Count 2).  See 18 U.S.C. § 3553(a).

On the production count, as discussed earlier in this Opinion, this Court found that a number of troubling facts in this case warranted a sentence higher than the statutory minimum.  In addition to producing the images of R.P., Defendant molested R.P. and abused his position of trust as R.P.'s father.  Additionally, Defendant distributed R.P.'s photographs, which have been discovered in investigations across the country.  Defendant also attempted to obstruct the Government's investigation by calling R.P.'s mother and maternal grandmother to get R.P. to recant her allegations.  Finally, Defendant had not expressed remorse for the production of R.P.'s images and continued to argue that they were "art."  However, the Court found that the Guideline sentence

of 360 months on Count 1 would be greater than necessary to achieve the purposes of 3553(a), even taking into consideration the aggravating factors described above. The jury found that the photographs of R.P. that Defendant produced depict a lascivious display of the genitals and, therefore, are sexually explicit and constitute child pornography. However, the photographs of R.P. do not depict violence, sadistic, or masochistic conduct, acts of penetration, or sexual conduct with another person. This Court found that the statutory maximum sentence of 360 months should be reserved for the worst offenders who produce the most harmful child pornography. Therefore, this Court found that a sentence of 216 months—higher than the statutory minimum but lower than the Guideline sentence—would sufficiently address the gravity of the crimes Defendant committed and deter Defendant from committing future crimes. Further, a lifetime term of supervised release would also safeguard against recidivism.

This Court recognizes that because this case involves child crimes and sex offenses, this Court must give respectful attention to Congress'

intent that courts punish such crimes with the severity they deserve. See

18 U.S.C. § 3553(b)(2). At the same time, the Court notes that the

Seventh Circuit has clarified that this Court's discretion to impose a

sentence outside of the advisory guideline range is not constrained by

Section 3553(b)(2). See United States v. Schmitt, 495 F.3d 860, 865

(7th Cir. 2007) (quoting United States v. Grigg, 442 F.3d 560, 564 (7th

Cir. 2006)).

Additionally, Defendant requested that he be sentenced to

concurrent sentences instead of consecutive sentences. See Defendant's

Sentencing Mem. 11-12. The Court agreed with the PSR's conclusion

that U.S.S.G. § 5G1.5(d) advises that the sentences for Counts 1 and 2

run consecutively. However, under 18 U.S.C. § 3584[6], this Court has

---

[6] § 3584. Multiple sentences of imprisonment
> (a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the

discretion to impose concurrent sentences where the Guideline provision recommends consecutive sentences. After considering the factors set forth in 18 U.S.C. § 3553(a), all other evidence and arguments, and the relevant guideline provisions, this Court decided that concurrent terms would provide an appropriate sentence in this case.

## III. CONCLUSION

THEREFORE, after considering the case file, evidence presented, relevant Guideline provisions, relevant statutory sentencing factors, arguments of counsel, letters submitted on behalf of Defendant, and Defendant's statements at the sentencing hearing, this Court sentenced Defendant to a sentence of 216 months on Count 1 and 72 months on

---

terms are to run concurrently.

(b) Factors to be considered in imposing concurrent or consecutive terms.--The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

(c) Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

Count 2, to run concurrently. Upon his release from prison, the Court ordered Defendant to serve a life term of supervised release. No fine was imposed, as Defendant has no ability to pay. Defendant was not ordered to pay restitution because no victim-impact statement was completed and the Government did not seek restitution. The Court ordered Defendant to pay a $200.00 special assessment that was due immediately. The Court recommended to the Bureau of Prisons that Defendant be placed in a facility as close as possible to Defendant's family in Springfield, IL. The Court also recommended Defendant for substance abuse treatment while in the Bureau of Prisons, as requested by Defendant.

The Court informed Defendant of his right to appeal. Defendant indicated that he wished to appeal and filed a Notice of Appeal with the Clerk.

IT IS SO ORDERED.

ENTER: March 21, 2012

FOR THE COURT:               s/ Sue E. Myerscough
                             SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE